# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA L. BARDNEY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 11 C 8628 |
| v. | ) | |
| | ) | |
| CHICAGO HOUSING AUTHORITY; the WALSH CONSTRUCTION COMPANY; and MORFIN CONSTURCTION GENERAL CARPENTRY, INC. | ) ) ) ) ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| KIMBERLY REID | ) | |
| | ) | |
| Plaintiff, | ) | No. 12 C 1975 |
| | ) | |
| v. | ) | |
| | ) | |
| CHICAGO HOUSING AUTHORITY; the WALSH CONSTRUCTION COMPANY; and DEMOS PAINTING AND DECORATING, INC. | ) ) ) ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Joshua Bardney and Kimberly Reid filed complaints against the Chicago Housing Authority ("CHA") and the CHA's private construction contractors alleging that the defendants unlawfully discriminated against them in violation of Section 3 of the Housing and Urban Development Act of 1968, 42 U.S.C. § 1981, and (in Reid's case only) Title VII of the Civil Rights Act of 1964. In complaints that are substantially similar, the plaintiffs allege that the defendants denied them priority employment opportunities at the CHA's Altgeld Gardens

development in violation of the Housing and Urban Development Act, and took adverse employment actions against them in violation of § 1981 (both plaintiffs) and Title VII (Reid only). For the reasons stated below, the defendants' motions to dismiss are granted because there is no individual right to bring any claim for relief under the Housing and Urban Development Act, and because Bardney and Reid fail to adequately state claims under § 1981 or Title VII.

## BACKGROUND[1]

Bardney and Reid are both African American residents of the Altgeld Gardens, a public housing development located in Chicago and owned by the CHA. Both plaintiffs are classified as "low income residents" as defined by Section 3 of the Housing and Urban Development Act. The plaintiffs filed separate complaints alleging that each was discriminated against by the CHA, Walsh Construction Company ("Walsh"), and Walsh's subcontractors, Morfin Construction General Carpentry, Inc. ("Morfin") and Demos Painting and Decorating, Inc. ("Demos"). On July 12, 2012, the Court granted Walsh's motion for reassignment of Reid's case to this Court's docket. Because each case contains similar legal and factual issues, and because each complaint ultimately suffers from similar defects, the Court resolves the pending motions to dismiss in both lawsuits with this unified opinion.

Walsh, a private construction company, had a contract with the CHA to perform construction work at Altgeld Gardens between 2009 and 2010. Morfin and Demos served as subcontractors to Walsh for work at the Altgeld Gardens site, and Walsh, Morfin, and Demos were paid by the CHA with federal funds provided by HUD.

---

[1] For the purposes of the motion to dismiss, the Court accepts the plaintiffs' factual allegations as true and construes all reasonable inferences in favor of the plaintiffs. *Gessert v. United States*, 703 F.3d 1028, 1033 (7th Cir. 2013).

Morfin employed Bardney as a laborer on the Altgeld Gardens construction project in November and December of 2009. Bardney alleges that he was denied priority employment opportunities under Section 3 of the Housing and Urban Development Act. He further alleges that he suffered employment discrimination on the basis of race because he was denied the same employment contract rights that were provided to white employees during his term of employment, and that Morfin and Walsh reduced his salary in December 2009 even though they did not reduce white employees' salaries. Bardney further alleges that CHA knew about the disparate treatment he suffered, but did not stop or rectify the discrimination.

Reid alleges that she sought to obtain work as a painter with both Walsh and Demos, but she was consistently denied employment opportunities. She alleges that she was denied employment because of her race and sex, and in retaliation for her previous complaints about Walsh and Demos' discrimination. She further alleges that she was denied priority employment opportunities under Section 3 of the Housing and Urban Development Act. Reid also alleges that CHA knew about the discrimination and did not stop or rectify it.

## DISCUSSION

The defendants argue that Section 3 of the Housing and Urban Development Act does not give rise to a private right of action to bring suit, that neither plaintiff established an entitlement to sue under Title VII, and that neither plaintiff states a plausible claim for relief under § 1981.[2]

---

[2] Reid filed a brief in opposition to the defendants' motions, but Bardney did not file any response to the motions. Where a plaintiff files no opposition to a motion to dismiss, a district court is justified in granting the motion based on the plaintiff's waiver. See *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). Bardney's waiver therefore constitutes an additional ground for dismissal of his complaint.

**I.	There is No Individual Right to Bring a Claim For Violation of the Housing and Urban Development Act of 1968.**

The defendants move to dismiss the plaintiffs' Housing and Urban Development Act claims pursuant to Fed. R. Civ. P 12(b)(1) for lack of subject-matter jurisdiction, arguing that the plaintiffs lack standing because there is no private right of action to enforce the Act. The Act, 12 U.S.C. § 1701u(c)(1)(A), states, in relevant part:

> The Secretary shall require that public . . . housing agencies, and their contractors and subcontractors, make their best efforts, consistent with existing Federal, State, and local laws and regulations, to give to low- and very low-income persons the training and employment opportunities generated by development assistance provided pursuant to section 1437c of Title 42 . . . .

The plaintiffs allege that the defendants did not provide priority employment opportunities for themselves and other low income residents of Altgeld Gardens.[3]

For the plaintiffs to enforce 12 U.S.C. § 1701u, they must first show that Congress intended to create a federal right. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). The Act includes no express right of private action, so to determine whether the statute creates a federal right enforceable through 42 U.S.C. § 1983 (*i.e.*, an implied private right of action),[4] the Court

---

[3] As *pro se* plaintiffs, Bardney and Reid may not bring claims on behalf of others. *Navin v. Park Ridge School Dist. 64*, 270 F.3d 1147, 1149 (7th Cir. 2001) (a *pro se* plaintiff is "free to represent himself, but as a non-lawyer he has no authority to appear as [another's] legal representative"). The Court will construe their claims as on behalf of themselves only; to the extent that Bardney or Reid alleges claims on behalf of other individuals, those claims are dismissed.

[4] The plaintiffs seek to enforce their alleged federal right through § 1983. Deciding whether a plaintiff can enforce a federal right through § 1983 is facially different than, but functionally identical to the initial inquiry into whether to imply a private right of action in a federal statute. The Supreme Court has rejected the notion that "implied right of action cases are separate and distinct from . . . § 1983 cases." *Gonzaga*, 536 U.S. at 283. In both implied private right of action cases and §1983 cases the inquiries overlap—"in either case we must first determine whether Congress *intended to create a federal right*." *Id.* (emphasis in original). Though the plaintiffs seek to enforce a statutory violation through § 1983, "implied right of action cases . . . guide the determination of whether a statue confers rights enforceable under § 1983." *Id.*

4

must consider whether: (1) Congress intended the provision in question to benefit the plaintiff; (2) the plaintiff has demonstrated that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence; and (3) the statute unambiguously imposes a binding, mandatory obligation. *Indianapolis Minority Contractors Ass'n v. Wiley*, 187 F.3d 743, 750 (7th Cir. 1999). Each prong of this test shows that the Act does not create a federal right. First, the language of the statute does not contain any rights-creating language that would indicate that Congress intended it to benefit the plaintiffs. *Gonzaga*, 536 U.S. at 284 ("For a statute to create such private rights, its text must be 'phrased in terms of the persons benefited.'") (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 692 n. 13 (1979)). Second, the right asserted—for contractors to provide employment and training opportunities—is vague and amorphous. And third, the statute imposes only a "best efforts" obligation, not a binding, mandatory obligation.

Therefore, like other courts that have considered the issue since *Gonzaga*, the Court finds that 12 U.S.C. § 1701u does not create an enforceable individual right. *See Miller v. Chicago Hous. Auth.*, No. 11 C 8625, 2012 WL 2116190, *3 (N.D. Ill. June 8, 2012) (dismissing 12 U.S.C. § 1701u claim due to lack of private right of action); *Price v. Hous. Auth. of New Orleans*, No. 09 C 4257, 2010 WL 1930076, *4 (E.D. La. May 10, 2010) ("§ 1701u does not unambiguously confer individual rights"); *Moore v. KTR Dev. LLC*, No. 09 C 2925, 2009 WL 3233530, *2 (E.D.N.Y. Oct. 7, 2009) ("there is no private right of action to enforce Section 3's provisions"); *Pleasant v. Zais*, No. 07 C 3080, 2008 WL 4621761, *4 (E.D. Wash. Oct. 17, 2008) ("No private right of action exists under this provision."); *Nails Constr. Co. v. City of St. Paul*, No. 06 C 2657, 2007 WL 423187, *3 (D. Minn. Feb. 6, 2007) ("Section 1701u does not create individual rights."); *Williams v. U.S. Dep't of Hous. and Urban Dev.*, No. 04 C 3488,

2006 WL 2546536, *9 (E.D.N.Y. Sep. 1, 2006) (finding no private right). Because there is no enforceable individual right, the plaintiffs' claims under 12 U.S.C. § 1701u are each dismissed with prejudice.

## II. Plaintiffs' § 1981 Claims

Bardney and Reid also allege that the defendants discriminated against them in violation of 42 U.S.C. § 1981. Section 1981 states, in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .

Each plaintiff alleges that he/she was "denied the same employment contracts rights that [the defendants] provided to white employees." Bardney Cmplt. ¶ 8; Reid Cmplt. ¶ 11. Bardney, who was actually employed by Morfin for several months, adds that his salary was reduced while the salaries of white employees remained the same. Bardney Cmplt. ¶ 10.

### A. Failure to Exhaust Administrative Remedies

The defendants first assert that the plaintiffs' § 1981 claims should be dismissed because each missed multiple "jurisdictional" deadlines, but that argument is incorrect. The defendants argue that plaintiffs failed to file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged discrimination, and that they failed to file their complaints within 90 days of receiving a right-to-sue letter from the EEOC. They fail to note, however, that plaintiffs are not required to file any EEOC charge at all in order to bring a § 1981 claim. *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 539 (7th Cir. 2007) ("§ 1981 . . . does not require a plaintiff to bring an EEOC charge before filing a claim in federal court."). Accordingly, the lack of EEOC charges does not bar the plaintiffs' claims under § 1981.

6

**B. Statute of Limitations**

The defendants also argue that the plaintiffs filed their § 1981 claims after the statutes of limitations had expired, but that is also incorrect. The statute of limitations on Bardney's § 1981 claim is four years, not two,[5] and therefore his complaint was timely. The statute of limitations on Reid's § 1981 claim, however, is only two years.[6] But Reid filed her complaint within that two-year period. She alleges that Walsh and Demos sent her a letter dated March 19, 2010, in which they refused to hire her for any position. Reid Cmplt. ¶ 8. Reid received the letter sometime after March 19, 2010, and she filed her complaint within two years on March 19, 2012. It is likely that some of the conduct Reid alleges took place more than two years before she filed her complaint. Because the Court cannot at this time determine which portions of Reid's claim

---

[5] On December 1, 1990, Congress enacted 28 U.S.C. § 1658, which establishes a four-year "catch all" statute of limitations that applies to any statute enacted after that date that does not contain its own statute of limitations. Section 1981 was enacted well before 1990, but Congress amended it 1991 in response to the Supreme Court's holding in *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), in which the Court found that the statutory right to "make and enforce contracts" did not protect against harassing conduct that occurred after the formation of the contract. The 1991 amendment to § 1981 clarified that the term "make and enforce contracts" includes the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). In *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004), the Supreme Court held that the four-year statute of limitations set forth in § 1658 applied to any §1981 cause of action that depends on the 1991 amendment. Claims under § 1981 that could have been brought pre-*Patterson* (*i.e.,* prior to the 1991 amendment), however, are "subject to the analogous state personal rights statute of limitations" because they did not "arise under" a statute enacted after December 1, 1990. *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 269 n. 4 (7th Cir. 2004). Bardney's claim does not directly concern his ability to *enter into* a contractual relationship, but relates to his ability to enjoy the benefits of his contractual relationship with the defendants. His claim for discrimination after the formation of a contract depends on § 1981(b), which was added in the 1991 amendment. Therefore, the statute of limitations for his § 1981 claim is four years.

[6] Reid alleges that the defendants refused to contract with her because of her race. Her claim is cognizable under § 1981 as it existed prior to the 1991 amendment. Therefore, the four-year "catch-all" statute of limitations does not apply to her claim because she does not rely on any statute enacted after December 1, 1990. 28 U.S.C. § 1658. Reid's claim is subject to the two-year Illinois statute of limitations for personal rights claims. *Dandy*, 388 F.3d at 269 n. 4; *Smith v. City of Chicago Heights*, 951 F.2d 834, 837 n. 1 (7th Cir. 1992).

might be untimely, but it is clear that at least some of the conduct Reid alleges took place within two years of when she filed her complaint, her complaint will not be dismissed on statute of limitations grounds.

      **C. Failure to State a Claim**

Although their § 1981 claims are timely and jurisdictionally sound, as presently presented they fail to state a *prima facie* claim of discrimination under § 1981. Neither plaintiff has demonstrated that the defendants had the intent to discriminate on the basis of race and/or gender. *See Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006).

To begin, neither plaintiff alleges that the CHA intended to discriminate against him on the basis of race, but rather only that the CHA "knew about" the discrimination and did not stop it. Therefore, their complaints fail to satisfy the "intent to discriminate" element of the test for a claim under § 1981 against the CHA. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 396-97 (1982) ("It would be anomalous to hold that § 1981 could be violated only by intentional discrimination and then to find this requirement satisfied by proof that . . . the defendants merely failed to ensure that the plaintiffs enjoyed employment opportunities equivalent to that of whites.").

Bardney does allege that Walsh and Morfin intended to discriminate against him. But the few factual allegations against those defendants that Bardney included in his complaint are too vague to state a plausible claim that he suffered from discrimination. Bardney alleges that he worked for Morfin (which was a subcontractor to Walsh) for no more than two months. He alleges that during that period both Morfin and Walsh reduced his salary, although they did not reduce the salaries of white employees. Bardney Cmplt. ¶ 10. But he does not explain why Morfin and Walsh would choose to hire him in November 2009 only to almost immediately

8

begin discriminating against him on the basis of his race, and he provides no facts to establish that the he was similarly situated to the white employees to whom he compares his salary. The facts Bardney alleges, standing alone and without any detail whatsoever, are insufficient to "state a claim to relief that is plausible on its face," and they do not "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

For her part, Reid fails to allege facts sufficient to state a plausible claim against Walsh or Demos. She presents only a conclusory allegation that she "was subjected to different treatment by Defendant Walsh and Defendant Demos because of her race and sex." Reid Cmplt. ¶ 13. That allegation is insufficient to state a plausible claim of discrimination. *Twombly*, 550 U.S. at 555, 570. Moreover, unlike Bardney, Reid filed a response to the defendants' motions to dismiss, but in her response she admitted that she "does not have exact evidence at this time to show specific examples of racial disparities in support of her claims." Resp. Br. (Dkt. 49) at 5. Her allegations are apparently based on her "personal observations," as well as articles and audit reports indicating that the CHA and its contractors might not be hiring as many low-income persons as contemplated by the Housing and Urban Development Act. But that evidence, to the extent that it is evidence of discrimination as to anyone else, does not show that anyone discriminated against *Reid personally* on the basis of her race or sex.

Accordingly, the plaintiffs' claims under § 1981 are dismissed for failure to state a claim. Since they could conceivably allege additional facts to establish a *prima facie* case of discrimination under § 1981, however, their § 1981 claims are dismissed without prejudice.

**III.    Reid Failed to Exhaust Administrative Remedies Under Title VII.**

Reid also alleges that the defendants violated Title VII by discriminating against her on the basis of race and sex when they refused to hire her as a painter.[7] The allegations necessary to state a plausible claim of discrimination under Title VII do not differ from those required to state a claim of discrimination under § 1981, *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 641 n. 5 (7th Cir. 2006) ("both Title VII and § 1981 employ the same analysis"); *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004) ("Because we evaluate § 1981 claims under the same rubric as Title VII claims, we need not address them separately."), so the deficiencies in Reid's complaint with respect to § 1981 apply equally to her Title VII claim. That claim must accordingly be dismissed for the same reason.

The dismissal of Reid's Title VII claim, however, is with prejudice because she failed to exhaust the administrative remedies available to her with respect to that claim. As a precondition to filing suit in federal court, a plaintiff alleging racial or sexual discrimination must first file her charges with the EEOC and must then receive a right to sue letter from the EEOC. *See* 42 U.S.C. § 2000e-5; *Conner v. Illinois Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005); *Gibson v. West*, 201 F.3d 990, 993 (7th Cir. 2000) (failure to exhaust administrative remedies is a prerequisite to filing a law suit, but is not a jurisdictional requirement). Failure to exhaust administrative remedies is an affirmative defense, *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 475 (7th Cir. 2009), but where an affirmative defense is evident from the face of the complaint, it is nevertheless subject to a motion to dismiss. *Jay E. Hayden Found. v. First Neighbor Bank, N.A.,* 610 F.3d 382, 383 (7th Cir. 2010). Here, Reid alleges (and the Court

---

[7] Bardney does not allege any violation of Title VII.

accepts as true)[8] that she filed charges with the EEOC in March 2010, but she admits (Reid Cmplt. ¶ 10) that she never received a right to sue letter. Because it is apparent from the face of the complaint that Reid failed to exhaust her administrative remedies under Title VII (and because it is now too late for her to do so), her Title VII claim is dismissed with prejudice.

\* \* \*

For the reasons set forth above, the defendants' motions to dismiss are granted. Both plaintiffs' claims under the Housing and Urban Development Act of 1968 and Reid's Title VII claim are dismissed with prejudice. The plaintiffs' § 1981 claims are dismissed without prejudice.

Entered: March 28, 2013

John J. Tharp, Jr.
United States District Judge

---

[8] The defendants submit a Freedom of Information Act response from the EEOC indicating that Reid did not file any complaint with the EEOC, but the Court need not rely on that exhibit, which is outside the pleadings, in order to resolve this issue.